NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BENNIE RICHARDSON,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

_____

2024-1847

_____

Petition for review of the Merit Systems Protection Board in No. PH-0845-20-0281-I-1.

_____

Decided:  March 24, 2025

_____

BENNIE RAY RICHARDSON, Moon Township, PA, pro se.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

_____

Before DYK, CHEN, and STARK, *Circuit Judges*.

PER CURIAM.

Bennie Richardson petitions for judicial review of the Merit System Protection Board's (Board) final decision. The Board affirmed the United States Office of Personnel Management's (OPM) reconsideration decision, which determined that Mr. Richardson owed a net overpayment of $11,036.76 from his Federal Employees' Retirement System (FERS) disability annuity. SAppx. 6.[1] For the reasons explained below, we *affirm*.

## BACKGROUND

Mr. Richardson, formerly employed by the U.S. Department of Housing and Urban Development, began receiving compensation from the Office of Workers' Compensation Programs (OWCP) in 2002 due to a job-related injury. SAppx. 71–79. In 2007, he left his position and subsequently applied for disability retirement under FERS, citing in part his 2002 injuries. SAppx. 64–66. OPM approved his application in November 2009, SAppx. 61–63, and he began receiving annuity payments effective December 19, 2009. SAppx. 67–70.

OPM's approval letter informed Mr. Richardson that his FERS annuity payments could not begin until he confirmed that he had applied for Social Security disability benefits. SAppx. 61. OPM further advised that if awarded such benefits, he was required to notify OPM, as his annuity payments would be subject to offset by any benefits. SAppx. 62; *see* 5 U.S.C. § 8452.

Mr. Richardson became entitled to receive Social Security disability benefits effective December 1, 2008. SAppx. 46. By 2012, OPM determined that he had been overpaid $19,314.80 due to the required offset between his

---

[1]    "SAppx" refers to the supplemental appendix accompanying the government's informal response brief.

FERS disability annuity and Social Security disability benefits. SAppx. 59–60; *see* 5 U.S.C. § 8452(a)(2)(B)(i)(I).[2] OPM explained that it would recover the overpayment through monthly deductions from his FERS annuity. SAppx. 59.

In 2016, Mr. Richardson disputed the debt, asserting in a letter to OPM that he had already repaid the United States Social Security Administration (SSA) $20,000 and did not owe OPM an additional $20,000. SAppx. 80. He also mistakenly believed OPM was collecting on behalf of OWCP. *Id.* In response, OPM clarified that the debt was related to FERS overpayments, not the SSA or OWCP. SAppx. 58. OPM later amended its response, explaining that it is charged with the administration of FERS under the applicable provisions of 5 U.S.C. § 8452, which require in part that annuities be reduced based on Social Security disability benefits. SAppx. 55–56.

Further review in 2017 revealed an error in the calculation of Mr. Richardson's Social Security disability benefit, requiring OPM to adjust his annuity and recalculate the overpayment. SAppx. 49–50. As a result, OPM determined he had been overpaid $22,690.40 but credited prior repayments, leaving a remaining balance of $11,036.76. *Id.* Mr. Richardson requested reconsideration and waiver

---

[2] 5 U.S.C. § 8452(a)(2)(B)(i)(I) provides that "the assumed disability insurance benefit of an annuitant for any month shall be equal to[] the amount of the disability insurance benefit to which the annuitant is entitled under section 223 of the Social Security Act for the month in which the annuity under this subchapter commences." Mr. Richardson does not dispute that that he began receiving Social Security disability benefits in December 2008 or that he continued receiving them after his FERS annuity payments began in December 2009.

of the debt, but in February 2020, OPM upheld its decision, explaining how the agency calculated the overpayment and reaffirming that the overpayment must be recovered in accordance with § 8452. SAppx. 44–47.

In May 2020, Mr. Richardson appealed OPM's decision to the Board. In his appeal, he raised a new argument that the amount he owes to OPM conflicted with a separate debt he allegedly owed under the Treasury Offset Program (TOP).[3] SAppx. 36. In an initial decision, the administrative judge was not persuaded, and affirmed OPM's reconsideration decision. *Richardson v. OPM*, No. PH-0845-20-0281-I-1, 2021 WL 2414255 (M.S.P.B. June 9, 2021) (*Decision*).[4] Mr. Richardson filed a petition for review with the full Board, which was denied in May 2024, thereby making the administrative judge's initial decision the final decision of the Board. SAppx. 25.

Mr. Richardson now petitions this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited. We must affirm the Board's decision unless we find that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or

---

[3] The TOP, administered by the United States Department of the Treasury's (Treasury) Bureau of the Fiscal Service, is a centralized system that collects delinquent debts owed to federal agencies. *See* 31 U.S.C. § 3716; 31 C.F.R. § 285.5. Through administrative offset, TOP withholds federal payments (such as tax refunds) to satisfy outstanding debts.

[4] Because the electronic version of the decision lacks page designations, we employ the SAppx pagination used in the decision at SAppx. 6–22.

(3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Substantial evidence supports the Board's decision affirming OPM's calculation of a net overpayment of $11,036.76. Mr. Richardson does not expressly challenge OPM's calculations. Rather, he implies that SSA has already collected the debt, arguing that TOP "authorizes the SSA to collect debt on behalf of OPM." Pet'r's Informal Br. 10. The Board correctly rejected this argument, finding no evidence that SSA collected debt on OPM's behalf. *See Decision* at 10–11. On review, Mr. Richardson does not cite any evidence or explain how the Board erred in finding no such evidence. Furthermore, the Board noted a few "fundamental reasons" that TOP does not apply to Mr. Richardson's debt. *Id.* at 12. For example, OPM never certified the debt to Treasury or SSA for collection, *see* 31 U.S.C. § 3716(c); 31 C.F.R. § 285.5(b), and there was never any delinquent debt to collect under TOP, *see* 31 U.S.C. § 3716(c)(6)(A); 31 C.F.R. § 285.5(a)(1).

Mr. Richardson also argues that the Board "failed to apply the relevant statutes and legal precedents," citing, for example, 5 U.S.C. § 8452, *Leighton v. OPM*, 529 F.3d 1071 (Fed. Cir. 2008) (per curiam), and 31 C.F.R. § 285.5. Pet'r's Informal Br. 12, 15. We disagree. The Board cited and reproduced 5 U.S.C. § 8452, which governs FERS disability annuity calculations, and correctly applied *Leighton* in sustaining OPM's 2017 recalculation of Mr. Richardson's overpayment, which was "based upon the full amount of SSA benefits to which [he] was entitled." 529 F.3d at 1076; *see Decision* at 8–9, 12; SAppx. 49–50. Although the Board did not expressly cite 31 C.F.R. § 285.5, which concerns the TOP requirement of certifying debts, the Board did cite 31 U.S.C. § 3716(c) when noting that OPM never certified the debt to Treasury or SSA for collection. *Decision* at 12. *See* 31 C.F.R. § 285.5(b) ("Centralized offset means the offset of Federal payments through the Treasury Offset Program to collect debts which creditor agencies

have certified pursuant to 31 U.S.C. 3716(c), 3720A(a) and applicable regulations.").

Finally, Mr. Richardson argues that his due process rights were violated because the Board failed to address his "objections regarding witness removal." Pet'r's Informal Br. 11. To the extent that "witness removal" refers to Mr. Richardson's denied request for additional witnesses at the hearing, the Board determined that Mr. Richardson failed to object to the administrative judge's ruling on witnesses and was therefore "precluded from raising this issue on review." SAppx. 24 n.2. This decision was not a violation of due process, and Mr. Richardson has not demonstrated that the administrative judge abused his discretion. *See Rizzo v. Soc. Sec. Admin.,* 25 F. App'x 978, 982 (Fed. Cir. 2001) (per curiam) ("Determinations concerning whether to allow the presentation of a witness at a Board hearing are soundly within the discretion of the [administrative judge].") (citing *Davis v. OPM.,* 918 F.2d 944, 946 (Fed. Cir. 1990)).

### CONCLUSION

We have considered Mr. Richardson's remaining arguments and find them unpersuasive. Accordingly, we *affirm* the Board's final decision.

**AFFIRMED**

### COSTS

No costs.